RAILWAY LABOR EXECUTIVES'
ASSOCIATION, et al., Plaintiffs,

v.

The LONG ISLAND RAILROAD
COMPANY, Defendant.

No. CV–86–2330.

United States District Court,
E.D. New York.

Jan. 21, 1987.

Jerome Alper, Lawrence M. Mann, Alper, Mann & Reiser, Washington, D.C., Peter M.J. Reilly, Islip, N.Y., for plaintiffs.

Sharon P. Domingo, Thomas M. Taranto, Jamaica, N.Y., for defendant.

## MEMORANDUM AND ORDER

GLASSER, District Judge:

The three-count complaint in this action alleges that the Long Island Railroad, by implementing a new drug-testing policy, has violated the Railway Labor Act, 45 U.S.C. § 151 *et seq.*, and the fourth amendment of the Constitution, as made applicable to the states by the fourteenth amendment. The Railroad has moved for summary judgment.

The first two counts rely on the Railway Labor Act (RLA), with the first count pertaining to employees not covered by the Hours of Service Act, 45 U.S.C. § 61 *et seq.*, and the second count pertaining to both covered and noncovered employees. The constitutional claim is in the third count.

Railroad employees have for some time provided urine samples when they underwent periodic physical examinations and examinations that followed hiatuses from work. According to plaintiffs, Railroad

employees did not have their urine samples tested for alcohol in either the periodic examinations or the return-to-work examinations, and they did not have their urine tested for drugs in the return-to-work examinations. Moreover, plaintiffs say that the only drugs for which their urine was tested in the periodic examinations were chemical substances that affect general health, rather than addictive drugs. In short, plaintiffs contend that the urine testing historically did not screen drug and alcohol abuse. Instead, plaintiffs maintain that the Railroad traditionally relied on sensory observation to identify possible drug and alcohol abuse.

The Railroad responds that it has long performed urinalysis and set its own medical standards. The Railroad concludes, therefore, that it had an arguable basis to modify its former practices in the detection of drug and alcohol abuse. In response to affidavits of three union officers to the effect that prior urine tests were at the discretion of the examining physician and were not screened for the presence of addictive drugs or alcohol, the Railroad avers that return-to-work urine drug screens were a longstanding practice, that the three affiants were aware of the practice, and that their affidavits should be disregarded.

■ This dispute over the history of drug and alcohol testing is significant because its resolution will determine whether the practice complained of in the first two counts of the complaint gives rise to a "major dispute" or a "minor dispute" within the meaning of RLA jurisprudence. *See generally Elgin, Joliet & Eastern Ry. v. Burley*, 325 U.S. 711, 723, 65 S.Ct. 1282, 1290, 89 L.Ed. 1886 (1945) (major disputes deal with formation of collective agreements or efforts to secure them; minor disputes deal with interpretation of existing agreement). Only if the dispute is major may plaintiffs invoke this court's jurisdiction to enjoin the Railroad from changing the status quo ante. *See, e.g., Local 553, Transport Workers Union of Amer-*

*ica, AFL–CIO v. Eastern Air Lines*, 695 F.2d 668, 674 (2d Cir.1983).

The three affidavits of union officers, if believed, place this disagreement in the category of major disputes. This is so even after the court discounts the hearsay components of those affidavits, as it must under rule 56(e) of the Federal Rules of Civil Procedure. "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, —— U.S. ——, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The court holds that the three affidavits raise genuine issues of material fact that are not decisively put to rest by the Railroad's reply affidavits. Moreover, the issues might be better developed after the Railroad answers plaintiffs' interrogatories touching on the history of urine testing. *See* Fed.R.Civ.P. 56(f). Accordingly, whether this dispute is major or minor is not yet susceptible of resolution, and the Railroad's motion for summary judgment on counts one and two of the complaint is denied.

One count three—the fourth amendment claim—the Railroad does not dispute that it is a state actor subject to the prohibition of unreasonable searches and seizures. Instead, it contends that the challenged urine testing does not constitute a search and seizure. Alternatively, the Railroad argues that even if the testing is a search and seizure, it is permissible because it is conducted reasonably and serves a compelling public purpose.

■ The Railroad's first contention need not detain the court long. The court holds that the testing of urine samples for the presence of drugs or alcohol constitutes a search and seizure within the meaning of the fourth amendment. *See Shoemaker v. Handel*, 795 F.2d 1136, 1141 (3d Cir.) (racing commission does not dispute that mandatory breathalyzer and urine tests are search and seizure), *cert. denied*, —— U.S. ——, 107 S.Ct. 577, 93 L.Ed.2d —— (1986); *Capua v. City of Plainfield*, 643 F.Supp.

1507, 1513 (D.N.J.1986) (urine testing is a search and seizure).

■ The Railroad's alternative position—that the search and seizure is nonetheless reasonable—is not ripe for decision. In *Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979), the Supreme Court held:

> The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application. In each case it requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted.

*Id.* at 559, 99 S.Ct. at 1884.

The court cannot perform the balancing test on the present state of the record. For one thing, the dispute over the past history of testing on the Railroad has a bearing on what is reasonable now. Additionally, the court must know the nexus between drug and alcohol use by Railroad employees and danger to lives and property; the reliability of the tests used by the Railroad; the possibility that positive test results will reflect drug or alcohol use in off-duty hours that does not lead to intoxication during working hours; and the circumstances that lead the Railroad to require urine samples to be given under surveillance rather than in private. This list of factors is not meant to be exhaustive. For the reasons stated, the Railroad's motion for summary judgment on count three of the complaint is denied.

The Railroad has alleged that the following plaintiffs do not represent any Railroad employees: American Train Dispatchers Association, Brotherhood of Maintenance of Way Employees, Hotel Employees & Restaurant Employees, International Longshoremen's Association, National Marine Engineers' Beneficial Association, Seafarers' International Union of North America, and Transport Workers Union of America. These plaintiffs are ordered to show cause, at a hearing to be held on February 4, 1987, in courtroom 5, at 4:30 p.m., why they should not be dismissed from this action for want of standing. At the same hearing, the court intends to hold a status conference on the progress of this action.

SO ORDERED.